UNITED STATES DISTRICT COURT



DISTRICT OF CONNECTICUT

**FILED**

2019 MAR 12 P 1: 37

U.S. DISTRICT COURT
NEW HAVEN, CT.

STATE OF CONNECTICUT ⠀⠀⠀⠀⠀:⠀⠀⠀⠀⠀ March 12, 2019

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

COUNTY OF NEW HAVEN ⠀⠀⠀⠀⠀:⠀⠀⠀⠀ <u>**FILED UNDER SEAL**</u>

<u>**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**</u>

⠀⠀⠀⠀I, James Lawton, currently assigned as a Special Agent with the Federal Bureau of

Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

⠀⠀⠀⠀1.⠀⠀⠀⠀I am a Special Agent (SA) of the Federal Bureau of Investigation and have been

so employed since May 1996.  Prior to joining the FBI, I was a Military Police Officer in the

United States Army for approximately 3 years.  I was also a police officer in the City of

Pittsburgh, Pennsylvania for approximately 2 years.  In addition to my prior experience as a law

enforcement officer, I have participated in classes devoted to narcotics enforcement, homicide

investigations, violent street gangs and electronic surveillance.  During my tenure as a federal

law enforcement officer, I have participated in investigations into financial fraud, fraud against

the government, interstate transportation of stolen property, kidnapping, illegal distribution of

controlled substances, homicide, extortion and crimes of violence perpetrated in furtherance of

organized criminal activity.  I have written, obtained and coordinated the execution of more than

100 search warrants and hundreds of arrest warrants pertaining to individuals involved in violent

crime, including DNA search warrants.  I have also spoken with informants and subjects, as well

as other local, state and Federal law enforcement officers, regarding the manner in which violent crimes are committed.

    2.      The Republic of Poland has submitted a request for mutual legal assistance concerning an individual name [REDACTED], a resident of New Britain, Connecticut. At the request of Commissioner/Assistant United States Attorney Sarala V. Nagala, I am participating in execution of the mutual legal assistance request. This affidavit is made in support of an application for a search warrant, pursuant to Federal Rule of Criminal Procedure 41, for buccal swab and hair DNA samples from [REDACTED], with a date of birth of in February of 1971. [REDACTED] is believed to currently reside in New Britain, Connecticut.

    3.      The information supplied in this affidavit is based upon an investigation being carried out by the Criminal Investigation Department of the Voivodeship Police Headquarters in Poznań, Poland, concerning a cold case sexual assault and homicide. The statements contained in this affidavit are based, in part, on my review of reports and/or information provided to me by the United States Department of Justice's Office of International Affairs. Because this affidavit is being submitted for the limited purpose of securing a search warrant for DNA samples, I have not included each and every fact known to me concerning this investigation. Rather, I have included only those facts which I believe support probable cause for the requested search warrant for DNA from [REDACTED].

**PROBABLE CAUSE**

    4.      On July 4, 1990, the police at Święciechowa, Poland, were notified by a witness named [REDACTED] of a corpse of a young female that had been found in a forest. The corpse was lying approximately 500 meters from a parking lot in Święciechowa, adjacent to the forest, near the road between Leszno and Włoszakowice, Poland. The police took steps to

Page 2 of 6

establish the identity of the corpse and determined that it was the body of 18-year-old ███████ ███████, who resided in Wschowa. Ms. ███████ had left her home on July 2, 1990, at approximately 9:00 p.m., with the intention of hitchhiking to Leszno, and was not seen again until her body was found.

5.      The victim was dressed in underwear, trousers, and a blouse, and the clothing showed no signs of damage. The victim had a visible, deep, bloody wound on her right inner elbow, though no tool that could have inflicted that wound was found near the body. The cause of death was determined to have been suffocation caused by choking, and investigators determined that the victim's body had likely been moved to the forest after she died, as there was evidence that the body had been dragged, including the disrupted forest floor around the body and the scattering of the victim's socks and shoes.

6.      A physical examination of the body was conducted, and semen of a human male was found inside the victim's vagina and anus. The victim was determined to have been 3-4 weeks pregnant at the time of her death. The examination and autopsy determined that, shortly before the victim's death, she had two sexual intercourses. Biological material from the body was secured and used to obtain a genetic profile of a potential perpetrator.

7.      During the examination of the body, three hairs from the victim's blouse and three hairs from the victim's panties were secured. These hairs were tested for mitochondrial DNA. One of the three hairs found on the victim's blouse was found to have come from a person's head and does not match the victim's DNA. Two of the three hairs found on the victim's panties originate from a person's pubic area and do not match the victim's DNA.

8.      At the time of Ms. ███████ death, her boyfriend was ███████████████. ███████████ married his current wife on September 16, 1989, approximately nine months

before Ms. ▮▮▮ death. ▮▮▮▮▮ owned a yacht on the lake at Boszkowo, where the victim was a frequent visitor.[1] Polish authorities found no specific evidence that ▮▮▮▮ was near the lake on the day of the murder, but noted that the events occurred during vacation season in Poland. Polish authorities also mentioned that ▮▮▮▮ drove a CZ 350 motorcycle that, for unknown reasons, was painted a color different from its original color.

9. ▮▮▮▮ stepmother reported that after Ms. ▮▮▮ death, ▮▮▮▮ began to behave in an irrational way and, while agitated, said that "…at last [she] will no longer blackmail anyone." He also allegedly said, "finally she was strangled."

10. Approximately one and a half years after Ms. ▮▮▮ death, ▮▮▮▮ to the United States to join his wife, who had moved here earlier to live with her parents. In 2000, ▮▮▮▮ returned to Poland for the funeral of his uncle, according to Polish authorities, but he has not returned to Poland since. According to Polish authorities, ▮▮▮▮ and his wife have two children in the United States.

11. In the course of the investigation by Polish authorities, other men who were known to be the victim's sexual partners were questioned, and DNA samples were obtained from them. These samples were examined and the results of the examinations have not demonstrated a link between any of those men and the murder.

12. Polish authorities also attempted to obtain the DNA of ▮▮▮▮ sister, ▮▮▮▮ who resides in Germany, to determine whether it bore any similarities to the DNA found on Ms. ▮▮▮ body, on the theory that ▮▮▮ and ▮▮▮▮ would share some familial DNA characteristics. ▮▮▮ initially agreed to an interview with Polish authorities but, after speaking to her brother, she declined to participate or to provide a DNA sample. Polish

---

[1] The Polish request for assistance states that, on the day of her death, Ms. ▮▮▮ was "coming back home from her stay on the lake."

authorities then requested that German authorities interview [redacted] and obtain her DNA, but [redacted] refused to testify and refused to provide DNA for biological testing.

13.    Polish authorities did obtain a DNA sample from [redacted], who is [redacted] paternal aunt. According to an expert report dated April 29, 2016, the biological material provided by the aunt was insufficient to issue a firm opinion.

14.    I know, based on my training and experience, that, using a sample of DNA from a person, a laboratory can determine a person's DNA profile. The two profiles can then be compared to see if they are similar.

## METHOD

15.    FOR BUCCAL SWABBING: The DNA samples sought herein will be collected by buccal swabbing. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside right cheek, then the inside left cheek, for approximately five to ten seconds under universal hygienic precautions. Two samples are requested in the event that one of the samples becomes contaminated or otherwise cannot be tested. The seized samples will be submitted to a forensic laboratory and will be subject to examination, testing, and analysis, and will be compared to the DNA material obtained from the physical evidence seized during this investigation.

16.    FOR HAIR SAMPLE: Samples of head hair will then be obtained from three (3) locations from the subject's head. Each area sampled will be a minimum of five (5) hairs which will be plucked from the head with the intention of capturing the root of the hair. These samples will then be packaged in a druggist fold and seized as one exhibit. Polish authorities are seeking hair samples to compare to the samples found on the victim's blouse and panties, and have

indicated that hairs from ▓▓▓▓▓ head, as opposed to another area of his body, will be sufficient. ▓▓▓▓▓▓ hair will be tested for DNA.

## CONCLUSION

17.    Based upon the foregoing, there is probable cause to believe, and I do believe, that obtaining buccal and hair samples for DNA analysis may provide evidence related to the sexual assault and murder of Ms. ▓▓▓▓ .

18.    Because this is an application that pertains to an ongoing criminal investigation, because the Polish authorities have requested that this request for assistance be performed confidentially, and because disclosure of the information contained herein as well as disclosure of the warrant being requested herein may compromise the investigation and increase the risk of harm for the law enforcement officers responsible for the search, I request that the search warrant, application and this affidavit be ordered sealed by the Court, until further order of the Court.

JAMES LAWTON
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me
this 12th day of March, 2019.

HONORABLE ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE